UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIKUN CHEN,<br><br>　　　　　　　Petitioner,<br><br>　　　v.<br><br>WARDEN OF THE DESERT VIEW FACILITY,<br><br>　　　　　　　Respondents. | Case No. 5:26-cv-00627-SRM-PVC<br><br>**ORDER GRANTING PETITIONER'S** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER [2]** |

Before the Court is Petitioner Zikun Chen's *ex parte* application for a temporary restraining order ("*Ex Parte* Application"). Dkt. 2. Respondents oppose the *Ex Parte* Application. Dkt. 9. The Court has reviewed the parties' arguments, relevant legal authority, and record in this case. The *Ex Parte* Application is **GRANTED**.

**I.    BACKGROUND**

The following facts are derived from the verified allegations in the Petition for Writ of Habeas Corpus ("Petition"). *See* Dkt. 1. Petitioner Zikun Chen ("Petitioner") is a native and citizen of China. Dkt. 1 at 2. Petitioner fled China and entered the United States on October 3, 2024. *Id.* at 2, 9. Department of Homeland Security ("DHS") officers initially detained Petitioner but released him on parole after determining that he was not a flight

risk or danger to the community. *Id.* at 2, 9. DHS also placed Petitioner in removal proceedings. *Id.* at 9.

Since his release, Petitioner has attended all his appointments and check-ins with the Immigration and Customs Enforcement ("ICE") and United States Citizenship and Immigration Services ("USCIS"). *Id.* at 2, 9. He has not violated the law since being released, and he has no prior criminal history. *Id.* at 9. Before his re-detention, Petitioner worked in construction and lived with his family and friends in Monterey Park, California. *Id.* at 2, 9. In 2025, Petitioner filed applications for asylum, withholding of removal, and for protection under the Convention Against Torture. *Id.* His asylum application is still pending. *Id.* at 2. On February 5, 2026, Petitioner appeared for his regular check-in where ICE detained him without explanation or a pre-deprivation hearing. *See id.* at 10. Petitioner requested to ICE that he be released but has not received a response. *Id.* Petitioner remains in custody to this day at the Desert View Facility in Adelanto, California. *Id.* at 4, 10.

On February 11, 2026, Petitioner filed this Petition and *Ex Parte* Application. *See* Dkts. 1, 2. Named as Respondents in the Petition are the Warden of Desert View Facility, Todd M. Lyons, Kristi Noem, and Pamela Bondi. Dkt. 1 at 4–5. Petitioner raises three claims against Respondents: (1) a Fifth Amendment substantive due process claim; (2) a Fifth Amendment procedural due process claim; and (3) a Fourth Amendment unlawful arrest claim. *Id.* at 10–13.

In the *Ex Parte* Application, Petitioner asks the Court to order Respondents to release him immediately and schedule a bond hearing before an immigration judge; to prohibit Respondents from moving Petitioner outside the jurisdiction of the Central District of California and any place outside the United States; and to enjoin Respondents from re-detaining him "without a pre-deprivation hearing before an immigration judge where the Government bears the burden of proving that circumstances have materially changed, rendering Petitioner a danger to the community or a flight risk." *Id.* at 15–16. Respondents oppose the *Ex Parte* Application, but their argument does not substantively address the claims or arguments raised in the Petition or *Ex Parte* Application. *See* Dkt. 9.

1   This matter has now been submitted and is ready for decision.

2   **II.   LEGAL STANDARD**

3   Federal Rule of Civil Procedure 65(b) governs temporary restraining orders ("TRO"). A TRO is an extraordinary remedy meant to preserve the *status quo* and to prevent irreparable harm "just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

The standard for issuing a TRO and preliminary injunction is the same. *See Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1012 (C.D. Cal. 2020) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). To obtain a TRO, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a TRO is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a TRO under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant may obtain a TRO if he can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic*

*of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Given the exigent nature of a TRO, a movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a TRO. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## III. DISCUSSION

Petitioner argues he is entitled to temporary injunctive relief on his Fifth Amendment substantive due process claim, Fifth Amendment procedural due process claim, and Fourth Amendment unlawful arrest claim. *See* Dkt. 2. As discussed below, because Petitioner is entitled to the full scope of temporary injunctive relief based on his procedural due process

claim, the Court declines to consider whether he is entitled to the same injunctive relief as to the two remaining claims.

### A. Likelihood of Success on the Merits

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These protections extend to all persons physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This includes noncitizens whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections before they are removed. *See, e.g., A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas*, 533 U.S. at 693 (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what process is due, courts must weigh three factors — otherwise known as the *Mathews* factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process usually "requires some kind of a hearing *before* the [government] deprives a person of liberty[.]" *Zinermon*, 494 U.S. at 127; *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) ("Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant [liberty] interest."). A post-deprivation hearing may suffice in special cases but only "when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015).

Based on this record, the *Mathews* factors weigh in favor of concluding that Respondents must have provided Petitioner with adequate notice of the reasons for re-detaining him and a pre-deprivation hearing.

First, Petitioner gained a protected liberty interest in remaining free of prison custody when immigration authorities released him pending removal proceedings. CBP has the discretion to release a noncitizen on bond or conditional parole pending removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(8). CBP may release a noncitizen only if the noncitizen can demonstrate that "such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). If CBP decides to release a noncitizen, that decision reflects a determination by the government that the noncitizen is neither a flight risk nor a danger to the community. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). This decision also reflects an implicit promise to the noncitizen that his liberty will "not be revoked unless []he 'failed to live up to the conditions of h[is] release.'" *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Thus, upon release, a noncitizen, like Petitioner, obtains a "protected liberty interest in remaining out of custody" when he is released. *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 933 (N.D. Cal. 2025); *see also id.* at 932 ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800

-6-

F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."); *Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (same); *Wasim v. U.S. Immigr. & Customs Enf't*, No. 2:26-cv-00755, 2026 WL 252352, at *5 (C.D. Cal. Jan. 30, 2026) (same).

Thus, noncitizens, like Petitioner, gain a significant liberty interest in remaining free of prison custody upon release. Here, the government's official action affected this private liberty interest.

Second, there is significant risk that a noncitizen in like circumstances would be erroneously deprived of his continued liberty through the procedures Respondents used here—that incarceration without notice or a pre-deprivation hearing. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata*, 2025 WL 2578207, at *3 (quoting *Zadvydas*, 533 U.S. at 690). While the procedures Respondents used here may be justified when a noncitizen poses an objectively reasonable risk of flight or danger to the community, no such evidence exists here. Notice and a pre-deprivation hearing protects a noncitizen from being erroneously deprived of continued liberty and allows them to demonstrate why their detention is unwarranted. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) ("Given the absence of any evidence justifying petitioners' detention, there is a significant risk that the deprivation of their liberty in the time between their arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified. Providing them with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (concluding second *Mathews* factor weighed in noncitizen's favor where

pre-deprivation hearing would have allowed petitioner to explain why his inability to comply with a condition of release did not justify re-detention).

Finally, while the government has a strong interest in ensuring that noncitizens do not pose a danger or flight risk during removal proceedings, the government's interest in re-detaining a noncitizen without notice or a pre-deprivation hearing imposes a minimal financial or administrative burden as compared to the cost of detaining a non-citizen pending a bond hearing, or removal, where it is unwarranted. *See Pablo Sequen*, 806 F. Supp. 3d at 1090 (explaining that the government has minimal interest in re-detaining a noncitizen who does not pose danger or a flight risk because custody hearings are routine and it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing); *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (similar); *Pinchi*, 792 F. Supp. 3d at 1036 (similar).

Here, the government has made no attempt to show that petitioner is a flight risk or a danger to the community. Nor can the government assert that providing a hearing would impose any financial or administrative burden. Accordingly, all three *Mathews* factors weigh in favor of Petitioner, and Respondents were required to provide Petitioner with notice of the reasons for his re-detainment and a pre-deprivation hearing. They did not do that here. Petitioner has made a clear showing that he is likely to succeed on his Fifth Amendment procedural due process claim. In turn, this factor weighs in favor of granting Petitioner temporary injunctive relief.

**B.     Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Petitioner has made a clear showing that Respondents likely deprived him of his procedural due process rights when they re-detained him without notice or a pre-deprivation hearing. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi*, 2025 WL 2084921, at

*6 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata*, 2025 WL 3578207, at *3 ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this factor weighs in favor of granting Petitioner temporary injunctive relief.

### C.     Balance of Equities and Public Interest

In addition, Petitioner and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). Petitioner also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not afford Petitioner with adequate procedural safeguards before his re-detention. Respondents, by contrast, will suffer minimal injury with a short delay in detaining Petitioner. "Faced with a conflict between minimally costly procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in Petitioner['s] favor." *Valencia Zapata*, 2025 WL 2578207, at *4.

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

### D.     Scope of Relief

A temporary restraining order is meant to preserve the *status quo* and to prevent irreparable harm before a hearing can be held on a preliminary injunction. *Granny Goose*, 415 U.S. at 429. For purposes of a temporary restraining order, "[t]he status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Moreover, the Ninth Circuit has "long held

-9-

that injunctive relief must be tailored to remedy the specific harm alleged." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).

Here, Petitioner's last uncontested status was the moment before his re-detention. Thus, a temporary restraining order requiring his immediate release would return him to the *status quo*. *See Valencia Zapata*, 2025 WL 2578207, at *4 (collecting cases).

### E. Bond

A court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*."'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

//
//
//

## IV. CONCLUSION

For the above reasons, the *Ex Parte* Application is **GRANTED** as follows:

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody. Respondents must file a declaration by February 27, 2026, confirming Petitioner has been released from immigration custody. Respondents are further **ORDERED** to place Petitioner on the same conditions of parole before his re-detention, if any existed before the re-detention and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.

2. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are temporarily **ENJOINED** from re-detaining Petitioner without notice of the reasons for why they intend to re-detain him and without a pre-deprivation hearing before a neutral decisionmaker, unless special circumstances exist that justify immediate re-detention and a post-deprivation hearing.

3. This order will remain in effect until March 24, 2026, at 5:00 p.m. This order may be extended for good cause or with Respondents' consent.

4. Respondents are **ORDERED TO SHOW CAUSE**, in writing, why a preliminary injunction should not issue. This response is due by March 4, 2026. Petitioner may file a response by March 11, 2026. The Court will set a hearing only if necessary.

5. Petitioner's request that Respondents be enjoined from transferring him out of the Central District of California is **DENIED AS MOOT** in light of the Court's previous order. *See* Dkt. 6.

6. Because the Court finds that Petitioner is entitled to full scope of the requested temporary injunctive relief based on his Fifth Amendment procedural due process claim, the Court need not address whether he is entitled to the same temporary injunctive relief as to his Fifth Amendment substantive due process claim and his Fourth Amendment unlawful arrest claim. *See Doe v. Noem*, 781 F. Supp. 3d 1055, 1067 n.2 (E.D. Cal. Apr. 17, 2025) (declining to address petitioner's remaining immigration-related claims because he was entitled to temporary injunctive relief under his APA claim); *L.G.M.L. v. Noem*, No. No. 25-2942, 2025 WL 2671690, at *16 (D.D.C. Sep. 18, 2025) (declining to address petitioners' remaining immigration-related claims where petitioners were entitled to temporary injunctive relief on TVPRA claim); *Okyem v. Noem*, No. 25-CV-2120, 2025 WL 2551137, at *3 (C.D. Ill. Apr. 21, 2025) (declining to address petitioner's due process or Declaratory Judgment Act claims because petitioner was entitled to temporary injunctive relief on APA claims).

**IT IS SO ORDERED.**

Dated: February 26, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE